Good morning and welcome to Day 3 of our panel in the West Courtroom. I'm privileged and honored to be sitting this week with Judge Carolyn King, previously served as our Chief Judge, and Judge James Dennis, who previously served many distinguished years on the Louisiana Supreme Court. We have had quite a variety of cases this week, criminal, civil, and sort of everything in between. We have some interesting cases on the docket this morning. Before we begin, I want to welcome the pre-law students and their advisor from Dillard University here in New Orleans, which happens to be my alma mater, shameless plug, but at any event. They're here today and they're going to observe the cases that we have today and otherwise kind of tour the building and sort of absorb some of the mystique of the Third Branch. We hope that they will enjoy and be informed by what they see and hear. Having said that, we call up the first case, EEOC v. BDO, Ms. Starr. May it please the Court, my name is Susan Starr and I represent the Equal Employment Opportunity Commission as appellant. In this subpoena enforcement proceeding, the district court ruled that a party can withhold relevant communications under attorney-client privilege if it simply shows that the communication involved an attorney. That is not the legal standard. The commission requests this court to remand to the district court to require BDO to show that each part of each of the over 200 communications at issue properly fall within the privilege. BDO can do this by making a clear showing that each communication in its entirety was made in confidence to a lawyer for the primary purpose of seeking legal services or opinions. All right, let me ask you this. Now you started out with a pretty big universe of things. I've got the log, you know, we've got the log and seen it and so forth. So you were able to narrow this down from wherever you started down to I guess the 278, is that right? I'm sorry, narrow it down to? Well, I mean you started off with the request, which was a universe of whatever number, but I thought I would recall that at some juncture things did narrow down to some point of which you couldn't agree. Is that correct? Well, right, there were arguments about relevancy and all of that and so, right, so now the only issue before the court has to do with the attorney-client privilege. So it's been narrowed down to these 228 issues in terms of this appeal. All right, so, go ahead, I'll ask my question once you, I'm trying to figure out why y'all couldn't resolve this, I mean other than the obvious, two stubborn sides, but unlike cases we get where we've got a seminal legal issue here for us to decide, et cetera, et cetera, I mean we're basically, you're asking the Fifth Circuit to referee a discovery matter, you know, which is not to say we're too good for it, but it's just not the usual stock of what we're doing. I'm not minimizing your argument about privilege and all that, but at bottom, we had the magistrate judge to look at it, magistrate judge says, no, I'm not having an in-camera hearing, district judge, been on a bench forever, you know, affirms it, right? So then it's up to us, so it's not the end of the litigation, so whatever we say, we're being asked to referee discovery, send it back down or not, and presumably if you get to the end, you know, maybe it's back before. So I'm just trying to set the tone here that, you know, we'll do what we're charged to do, but it just strikes us, I think, that there are thousands of discovery disputes that go on every day, you know, and the parties are intractable, they call up the judge and, you know, then they resolve it. So just before we get into the finer points of privilege and all that, was there no other way to segregate these documents in such a way that, you know, the call was easy? I mean, I can kind of see the magistrate not wanting you to dump 278, you know, pieces to say you look at them, even though we all understand what in-camera. So the question embedded, was there any other step mechanically that might have rendered this a little bit smoother to get the call one way or another? Well, Your Honor, the way that you just characterized it about being a referee, the issue is not on the facts. The issue is the legal error, that the court made a legal error so that when it began this, it said that any communication with an attorney is automatically covered by the privilege. That is the focus of . . . Well, I mean, I understand the judge said that. Judges say a whole lot of stuff. You know, you know that. I mean, appeal is from the judgment, not from the reasons. Judges say lots of stuff. I mean, we give memorandum of opinion. A judge has got stuff in there that's not exactly right, but we don't, in that case,  We don't say we're affirming for the reasons of the trial. We write an opinion. And so, the mere fact, assuming what you say is correct, that that broad statement is an overstatement and not a correct issue, well, I mean, should we really be topsy-turvy over us saying, thou shalt not say that anything out of the law is up? I mean, that said, my point is that the issue dividing the two of you is, you know, more similar than did the judge say something that, well, isn't totally correct or something. So, you're really here to get us to issue a holding, pronouncing forevermore that that is not correct. But, Your Honor, it wasn't just the mere utterance of the wrong legal standard. It was the application of the wrong legal standard. There is absolutely nothing in that log. The log, this is, to remind the Court, this is a subpoena enforcement proceeding. This is not a case on the underlying merits. This is not about a lot of discovery. I know. The only evidence before the Court, the only evidence to prove privilege is this privilege log. For a privilege log to be sufficient to meet, well, a stand back, BDO is the burden of satisfying with whatever evidence, a privilege log or whatever, it's burden of proving that each seeking legal services. There's nothing in that log at all that speaks to confidentiality, nothing. It's just, there's a complete absence. Typically with privilege logs in other cases, there's privilege logs coupled with declarations and other, and often those declarations tend to go to confidentiality. But all we have here is this privilege log. And what makes, in addition to nothing on the surface, if you look further, there's other confidentiality issues potentially lingering. For example, the e-mails that are listed here, all these e-mails, they're varying length. Some are one or two pages, but some are up to 11 pages. You can't discern here whether or not that e-mail that's 11 pages is part of a string of e-mails, and if so, who's the recipient and author of those e-mails, what's the content of those e-mails, whether or not some of those e-mails are confidential, some aren't, and then whether or not that confidentiality was breached by the sharing of this information. There's a list here of a lot of attorneys. Again, this is all we have before us. EEOC did not know who a lot of these attorneys are. Going back and forth, we found out that a lot of these attorneys were part of the outside counsel's firm. But we don't know whether or not, what their relationship is with BDO and whether or not they're in the sphere of confidentiality. So just the confidentiality issue in and of itself, and the court never spoke to it. The court did not consider that. Again, it's the application of the wrong legal standard. Obviously courts can sometimes utter the wrong thing, but when they apply the wrong legal standard, then it's properly before this court. We're not asking the court to kind of go through all these 228 communications. We're asking the court to remand for the district court to do it under the proper legal standard. Well, as I understand it, this Interbake Foods case, which is a good, sets out the rules of engagement, you might say. It says, once a prima facie showing of a privilege has been made, an opposing party can justify in-camera inspection of the documents by advancing a factual basis sufficient to support a reasonable good faith belief that in-camera inspection may reveal evidence that information in the stuff is not privileged. So the burdens on the EEOC to advance a factual basis sufficient to support a belief that in-camera inspection will reveal evidence that the information isn't privileged. Am I in the right pew? Well, if the B deal meets its burden of proof, this court has been clear in U.S. v. Robinson that the proponent has It didn't look to me as if the proponent of the privilege had made a prima facie case that it was privileged in many instances. Your Honor, yes. Because the burden is on the proponent. The burden is on the proponent. Initially. Right. And that's what this Court said in U.S. v. El Paso, that they must establish proof each element. If you put on your log a letter to ABC, who's a lawyer, that does not establish that it's a prima facie privilege. That's right, Your Honor. It doesn't say what the conversation is about, what the communication is about, whether it was seeking legal advice or anything like that. Yes, I agree, Your Honor. And also seeking legal advice is the conclusion. In other words, the proponent of a privilege is supposed to give documentation, provide information so that the reader can go, oh, well, of course, that's legal advice that would be protected. So whether it's EEOC or the Court, there's no way looking at this privilege log that you can independent determination. It's just conclusory. What's also troubling in this case is that we're dealing with human resource claims. So it's legal advice attached to a human resource claim, like about one individual or another. Well, Don, every human resource claim is automatically encapsulated in attorney-client privilege. Human resource activity is part of common practice in the corporate world. There's a difference between in the HR world, you investigate, you gather information, you engage in a lot of activities like that. That's separate and distinct from giving legal advice based on the information that's been gathered. And that would be protected. And you can't tell, looking at the face of this, whether we're talking about legal advice based on the information that was gathered or the gathering of information. That's particularly true given BDO's statement on page 3 that all of HR activities having to do with claims against management were removed from the Office of Human Resources and put into the Office of General Counsel. So by saying that, they're saying that all of the activities of the human resources, both business and legal, were put into the Office of General Counsel. So when we're looking at all of these communications between the Office of General Counsel and someone else, and they're saying that it's about a claim and it's legal advice, you can't make that determination based on that and based on Bauer's declaration in which she stated that she was a participant in a lot of these. She's the charging party. And she was an HR director and a participant in a lot of these communications. And she testified in her declaration that most of what the contents of those emails were about business advice and not legal advice. So we are simply asking the court to remand to the district court for the district court to apply the proper legal standard. We're not saying that there's no, it's impossible for any of these communications to not be privileged. We're just saying, BDO, meet your burden. And then we'll go from there. And the same problem- Your Honor, no, not necessarily. Because the court has discretion. The burden's on BDO. The burden's not on the court. We were just suggesting in-camera review. That's something that could be done. We were trying to work cooperatively. We were trying to get this resolved and thinking, well, if the court took an in-camera review, then that would settle this. But that didn't happen. But that's not the reason we're here. We're here because of the erroneous legal standard. And apply the legal standard and let the court use its discretion in unearthing what exactly is going on in these communications. And the same legal error infected the protective order. And I just, I see that I'm low on time. But the same legal error that existed in terms of the analysis of the privilege law was also there in terms of the court's determination that Bowers shared privileged information with the EEOC. Because its idea of what was privileged is based on the incorrect legal analysis. And also, this court has held that confidential information can be used by a managerial person when they're in pursuant of the vindication of their personal rights. There's been a couple of cases, Doe versus A Corporation, in which a lawyer that was, in-house lawyer, was suing his corporate client. And the court held that that individual could use both confidential and non-confidential information to vindicate their personal claims. And that was an 83 decision. But again, in about 2007, if I remember correctly, the court restated that in the Wiley case, or Willie case. The same principle, an in-house counsel can use both confidential and non-confidential information to vindicate their claims. So thank you, Ron. Thank you. Sorry, you have reserved your rebuttal time. Yes. Thank you. All right. Thank you. Ms. Cowan? All right. Help clear the thicket here. Thank you. May it please the court. And yes, Your Honor. I was actually the original counsel who negotiated the privilege law with the EEOC. And I would like to begin with the questions you posed to the EEOC's counsel. We just especially appreciate when we have the original actors here to give us the on-the-ground, firsthand information about what happened. Thank you. And I think it would be helpful because I do think it's important to start with the procedural history, which is in the record. So everything I'm about to tell you, even though it reflects some of my conversations with Ms. Wilhite, were described in the briefing. So I'm not going to go beyond the record. I understand that would be inappropriate. If you look to the original application to enforce the subpoena, as you pointed out, Your Honor, there were a number of issues that were raised by the EEOC, alleging that we were not in compliance. And the minute that got filed, I have to tell you, I was surprised. And so I called the trial counsel, Ms. Wilhite, and I said, you know, whatever has happened between the parties, we should talk. And if you look at our response to the application, I actually begin my brief with Chief Justice Roberts forward to the amendment to the rules of civil procedure about the importance of being focused in discovery and also lawyers talking and collaborating. And if you look to the record on appeal, pages 45 through 46, you will see in our response to the application to show cause, we then highlight for the court, Magistrate Johnson, what the product of those conversations were. And one of them was that we had negotiated through a series of three calls this privilege log. Ms. Wilhite and I agreed that the log now comported with what they needed to evaluate our claims of privilege. And we originally had a call scheduled then to go through what, if any, concerns they had about the individual entries. And my apologies, I don't have the page in front of me, but there was an email attached in the record where Ms. Wilhite advised me that the EEOC had made a determination that they believed that we were using privilege as a sword and that we would not have such a conversation. Instead, they preferred to seek relief from the court asking in-camera review of all 278 entries. And if you look to their reply brief at Record of Appeal, pages 94 through 95, that's page 5 and 6 of their reply brief in the underlying proceedings, they acknowledge that I have accurately represented the concessions that have been made in the negotiation of the log. But they expressed four concerns in support of their request that the magistrate review all 278 in-camera, all 278 entries in-camera. First, that the communications, some of them included communications between non-lawyers. Second, that Ms. Bauer, the charging party in the underlying EEOC proceedings, was either a sender or a recipient. Third, that they believed that it was our burden to go through each and every communication. And their theory was that, Your Honor, for example, if you had called me and said, we have an employee who is saying that she is being sexually harassed. Here is what she has alleged. And I, as the lawyer, say, here is my recommendation. We need to investigate to take advantage of our affirmative defense under the Supreme Court rules. We ought to conduct some of this under privilege. We ought to conduct some of this without privilege. Here are the questions you should ask. The EEOC's theory was that the underlying communication from the human resource person who called me was a fact that was not privileged. And only the actual legal advice that went back was privileged. And I explained to Ms. Wilhite that did not comport with the Supreme Court's decision in Upjohn. That both parts of the communication were privileged. That I had, in fact, exhausted my ethical responsibility to ensure that all of the But I remained willing to go line item by line item and respond to any particular concerns. And then finally, we learned through the brief, the reply brief, and in court that they had been speaking to witnesses who they claimed told them that these communications were not really for the purpose of securing legal advice. But you acknowledge that the burden initially is on BDO if you're asserting the privilege to at least establish the prima facie nature of that, right? Absolutely. We agree. What about the log? I mean, and I appreciate you're setting the background that, I mean, you got to the skirmish, so to speak, at least starting off with discussions, etc. But what about the log itself? Part of the contention made is the log is the log. But basically, it just says, Email to Deputy General Counsel seeking legal advice. Read by Perlman. I mean, the assertion is that, is it that just because you say it is enough to satisfy the burden? And most of these say, attaching confidential letter body, body, body. I mean, they're descriptive, I guess, maybe is the way I'll put it. So is it a position that you satisfy the burden? Not you personally, but BDO satisfies its burden by just enunciating that something is, but without more. Yes. So it is my burden. And I believe this log and these descriptions satisfy that. And I think we need to begin, and my culpa for me, my brief should have started here. Rule 26-5-2. The federal rules of civil procedure clearly enunciate what my burden is. When a party claims privilege, they need only, quote, describe the nature of the documents, communications, or tangible thing in a manner that, without revealing information itself, privileged or protected, will enable other parties to assess the claim. And so if you look at the entry that you talk about, Email to Deputy General Counsel seeking legal advice, Bob Perlman investigation, Ray Billing dispute, this entry, and in fact, Ms. Wilhite agreed that these entries were sufficient for her to at least understand the nature of my claim, which comports with Rule 26-5-2, because remember, the Bob Perlman Billing dispute had been discussed exhaustively in 27 single-spaced pages of position statement. So the investigator understood perfectly that this was a dispute between two gentlemen about who should get credit for a client, and he had filed a complaint saying that he was denied the credit impermissibly. The same with some of the others. For example, Lisa Maurer, entry number five, Email to Deputy General Counsel seeking legal advice, Lisa Maurer discrimination claim. Our position statement outlines, before they got this privilege log, exhaustively, exactly what Ms. Maurer's claim was, that she believed she had been brought in to a pay grade that was less than a male peer, even though she had the same educational background, and she wanted the same amount of pay. We had revealed what she had alleged. We had revealed the remedial measures that were taken. We disclosed all of the email communications between Ms. Maurer and the company, and what we withheld. What about the others? Many of the others, I understand, were just showing courtesy copies going to a lawyer, and therefore, the whole thing's privileged. That doesn't, I don't think that satisfies your burden. That would not satisfy my burden, but that's not what actually occurred, and that was a finding of fact by the magistrate. We said no. The 36 entries that were exchanged between non-lawyers, if you look at basis of attorney client privilege, we say the reason we have invoked privilege over these communications is because the sender is sharing with the recipient the advice they received from counsel in order for them to implement that. The case law does say that you can have communications between non-lawyers where you're sharing the advice, so if Justice King was the person who had to implement the advice, and I were the non-lawyer that had shared Justice Dennis's advice, and I communicated that, that would be privileged. And again, I think the important part here is, although Ms. Starr has said we just think the log is sufficient, that was not what was raised in the court below. What was raised in the court below was I don't trust them. Here are illustrative examples where no privilege probably applies, and therefore, we want you to review, Your Honor, all 278 entries. I'm a little bit surprised to hear that's not what they're seeking now because that was absolutely the relief sought in the court below, and now what they're asking for is for you to remand for a do-over for relief that was never sought in the court below, and that's not appropriate. Well, we've made people do them over before, particularly when Vioxx or somebody like that wants to be protected. Your Honor, here . . . We made Judge Fallon go back over. I don't know how many, a hundred or so. I dissented, but my panel made him go back over, and I tell you what, a lot of these look kind of like those where you're saying they're privileged, but you don't really show how the EEOC can be sure or satisfied that it is privileged. But, Your Honor, that's . . . And I don't think . . . I'm not sure that the district judge acted properly in just one line saying no error of law or fact. He didn't look at any of these things either. Well, again, I think that you have to look to the magistrate's ruling, which is I've reviewed the log. It's sufficient. I declined to review all 278, and then he offered, or she offered Ms. Wilhite the opportunity to go line item by line item, and I have often . . . I had offered Ms. Wilhite that opportunity. I never said no. To your point, Chief Justice, we got in this vote because the EEOC has always steadfastly maintained that they want in-camera review of all 278 entries, and they don't want to do the work to have the conversation either with myself or to point to the judge the entries that trouble them. Instead, what they want is to burden the court with all 278 documents being reviewed in-camera based on an argument that was not raised in the court below. Again, this log was negotiated, and so the concerns about I can't figure out what you're saying, that was not raised to me or to Magistrate Johnson. Those are being raised for the first time on appeal by somebody who didn't participate in those negotiated calls and who, again, I would point the court back to the record on appeal, pages 45 and 46 and 94 and 95, which summarized the concessions that had been made and the arguments that were teed up to the magistrate, and if you look back to the hearing notes, and I appreciate, Your Honor, that the Supreme Court has said, and I'm glad you raised, that your job is to review judgments, not reasoning. The judge, however, I think when they say, she said, everything that comes out of the lawyer's mouth is privileged, that is not an appropriate characterization of what she said. Recall there are two issues pending in this appeal. One, was the log sufficient such that they needed to make individualized review? And two, during oral argument and in prior communications with us, it became apparent that the EEOC was having ex parte interviews with senior level managers of BDO who no longer work for us and asking, what did the lawyers tell you? And it was during a colloquy over the EEOC's suggestion it was okay to ask, what did the lawyers tell you, because they would determine for themselves whether it was privileged, that that statement came out. And I agree that if Magistrate Johnson had to do it over again, she probably wouldn't have framed it quite that way. But it's an exasperation in that moment, as she is feeling what is clearly an inappropriate comment. She asks point blank, Ms. Wilhite, did you ask former BDO executives, what did the lawyers say? And Ms. Wilhite doesn't answer directly. She says, we didn't seek privileged communications. And it is in that colloquy that Magistrate Johnson clearly is frustrated by the government's position that they can elicit ex parte communications and then self-evaluate whether those communications are privileged. And that is the second part of her order that is up for review here, and we believe that order, also subject to a clearly erroneous standard, should be upheld. Because what was described in the proceedings below should concern this court. We have a situation where lawyers for the government are saying, we, in ex parte communications, can ask what the lawyer said, and then after it's uttered, we'll decide whether it's privileged. It's too late. What Magistrate Johnson and what I would argue is that what should have happened is there should never be a question, what did the lawyer say? If the EEOC believes that some of those communications were not privileged, the appropriate thing to do is to contact me and say, we'd like to interview witnesses. And we want to know what did Ms. Grimmer advise, or what did Mr. Poulos, or what did my partner Terrence Smith advise this witness of, and I have an opportunity then to object. And then we go off to an Article III judge, not a member of the executive branch, to make a determination about whether that communication is privileged. And the order that Magistrate Johnson issued was appropriate because until we know what they've elicited, we don't know what the remedial measure should be. We have to have a chart saying what have you already breached, or what has already been revealed to you. And Magistrate Johnson's order was very clear. Magistrate Johnson said, I don't want to know everything that's been told. I don't want to see all of the notes. I want a very limited disclosure. You need to tell BDO what witnesses have already told you regarding communications they had with BDO's legal counsel. And that is appropriate. The case law that we've cited in our brief makes clear that it is an ethical prohibition to elicit privileged communications. And when that has happened, sometimes something as far as disqualification may be the remedy. Perhaps there are other lesser remedies, but we cannot get to what the remedy should be until we understand the breadth and the scope of the violation. Was it a no harm, no foul because it was one communication that was really fairly benign? Were there 40 communications? And what is very troubling in this case is if you look at the charging party's underlying allegations, she's saying, I didn't get a job, and by the way, this company discriminates against all women and people of color in their organization, and I would like to tell you all of my stories as the former Chief Human Resource Officer, including all of the bad advice I got from the lawyers when I called them. I think the lawyers are getting it wrong. Well, that's precisely what should not occur, and I think that the KBR decision from the D.C. Circuit in 2014 speaks to this very clearly. In that decision, it's Kellogg-Brown in our briefs, they go by KBR, but Kellogg-Brown, the court recognized that one of the fundamental reasons why a business would call its lawyers, even in a human resource setting, is because you want to know when someone calls and says, I think my manager is discriminating against me, the organization is looking to do two things. One, understand what its legal obligations are in regard to that employee and the employee who's been accused of wrongdoing, and two, mitigate its legal risk. So yes, when we have allegations that a partner in the organization has been accused of doing something bad, we have legal risk by way of the partnership agreement, are we going to terminate this partner? We have legal risk by way of the employee who's made the complaint. If we learn during the course of the investigation, perhaps there's no wrongdoing, we may get a claim from the employee anyway. That's exactly what a lawyer does. Where are you now with this, not a clear question. I understand what you're asking. I have heard nothing back from the EEOC on this log. Their investigation, I assume, is ongoing. We're not privy to what's happening at the administrative level. Ms. Bauer also has claims under Section 1981, and she and her private lawyer have brought those claims in federal court in Houston. They have not waited for their notice of right to sue. So, is it the view that it's the log plus, in other words, this is the log, but there's a plus in terms of some other document or documents which explicate, in addition, the summary statement that's here. Is that what I'm understanding? Yes. I think the log presumes a familiarity with the case, and the reader... I have no doubt that the three of you reading these would say, I don't understand, but the person who is handling this case knows precisely what these refer to, because there were two very lengthy position statements written to the EEOC discussing it in detail, each of the allegations described in this chart. So, Magistrate Johnson had the log plus? Yes. And those position statements, I believe, are in your appellate record as well. All right. So, for the sake of asking, you know, we'll do what we do, but we always like it when people resolve these matters without us having to write exponentially on Rule 26. So, the question is, having now articulated the views, had catharsis, or whatever the posture, that this matter could be resolved, you know, in terms of the sit-down on these matters, or at least reduced down, and so forth, or is that impractical at this point? I would never tell the EEOC I refuse to speak about this log. This is an ongoing investigation, and I think Magistrate Johnson was clear, if you end up back in my courtroom because you decide to bring suit, she said on the record, if it were other discovery that perhaps some of these aren't privileged, you can bring that back too. So, I never cut off conversation, and I would not be opposed to that. I'll tell you why I asked that, because, you know, within our court, we have a chief mediator's office, and so, you know, it's the case in other cases in which we've got them teed up, but we will ask the parties, look, would it be meaningful for you and this side to speak with the chief mediator's office? There's no obligation. We're not going to order it for it to happen, but often, by the time it gets here, some of these differences do get crystallized, you know, they're illuminated, et cetera, and sometimes having a third party just to kind of move the thing on down the track. Now, obviously, if people are in such intractable positions, you know, that's kind of a waste of time, but they're in this building, and, you know, the mediator's office is good and all that. I just sort of throw it out, and I'll ask Mr. Starr the same question of whether or not it would be beneficial at least, you know, to start with to see if any discussions may move it down. Maybe we don't ever have to rule, but, you know, after some period of time, if it's not, we do what we do. Now, we would never be asking the mediator, what did y'all talk about and all that stuff. What we do is based on what's in the briefing and what, you know, what we hear, but it at least strikes as something that, given what you said, there have been negotiations, there have been discussions, maybe there's misunderstandings as to what the plus is and so forth. So . . . I have no objection and would welcome the opportunity to speak and resolve disputes on their own. Okay. Always brings more certainty. All right. I cut Judge Dennis off. One question. Just for our information, in case we do have to decide this case and you don't work something out, as I understand your argument, there's additional explanation of why these items are privileged that is not in the privilege law that you're basing your argument on primarily today. Now, how do we know? Do you tell us somewhere in your brief or somewhere where that extra information is with regard to each item? Because looking at the log itself, I don't blame the EEOC for saying this doesn't tell us why this is privileged. I want to be . . . I don't want to mislead you, Your Honor. There's no other source that says here's why it's privileged. What we have is what I understand to be perhaps the confusion is when I say the Lisa Moore complaint, you may not have the background of what that means. So in the position statements, when you get a charge of discrimination from the EEOC, you write a letter brief saying here's my theory of why Ms. Bauer wasn't discriminated against. Here's what really happened. And we lay out our entire position. And that has exhaustive detail about what Ms. Moore's complaint is. I would say if you understood that she was complaining about discrimination and you understood all of the facts, then to say . . . and Ms. Bauer then reached out to get legal advice about this claim, that entry should be sufficient because Rule 26 is clear. You can't force me to actually disclose the advice, then I've revealed the privilege. Thank you. Thank you. All right. Thank you, Your Honors. Thank you, Ms. Conner. Back to you, Ms. Starr. All right. Your Honors, this plus, there's no other evidence in the record but the log. There's representations by counsel. Representations by counsel is not evidence. All we have in the evidence is this log. So that was quite confusing to me. And what this log says is seeking legal advice. Well, one thing I want to mention about the log. The log repeats itself over and over and over again. There's hundreds of communications involved here that many of . . . like 40 of them have the same descriptor. Now, that's not conclusive, but in and of itself, that doesn't suggest precise information exposing or revealing really what's going on in that communication. There's no document here that's been redacted. It's just . . . it's almost like a document dump. It's like, here's all these documents. We're going to slap on a label of seeking legal advice, and that's enough. That's all we have to do. Now, EEOC, you do it. You go through and you prove it. That is not the . . . that's not the law. The law is they have the burden of establishing each of the elements. Can we put in evidence? Absolutely. But it's not our burden, and there's been this shift of burdens. This burden-shifting kind of paradigm is not the law of privilege. And I did want to point out that . . . well, the statement of legal advice . . . Opposing counsel made this point, I think, in the briefs and also before the court here, that if we said any more, we would be revealing confidential information. Well, there was a similar case, and it's not in my briefs, but I can certainly supply for the court, in one case in which it's called Scott v. Chipotle Mexican Grill, Southern District of New York, 2015. And the court in that case . . . the privilege laws were going back and forth. And this was about the eighth or ninth version, I believe, in this case. And it said, legal advice concerning the company's apprenticeship program. And the court said, no, that's not enough. And then the company came back and said that this was enough. Why isn't it in your brief if it's got all that traction? I was just responding to what was being said, Your Honor, that it would necessarily mean that you're revealing confidential information. And I'm just showing an example of where you could say more than legal advice, and it wouldn't reveal confidential information. A discussion of legal advice among corporate employees responsible for receipt and implementation of advice. So that would be something that has a little more meat to it. It's about employees using the legal advice in a particular way. So the point is they need to do more. The opposing counsel was saying, look, EEOC has all this information. We know all this information that's been discussed. So what's the objective of putting it in the law? Why not make the law a little more beefy? If you don't have a problem with us knowing, then ---- Slow down, slow down. You're doing good. Slow down. Pardon me, Your Honor. You're going to get your money's worth by the clock. Hold on. All right. What about her point? She started off saying, okay, the law itself, you know, was a negotiated item, et cetera, et cetera. It may not have gone as far, but it was a negotiated item, et cetera. I'm not saying that's dispositive of the arguments you're making, but at least it's helpful to figure out this was working along the lines of trying to figure this out, work it out, get to a point where at least there was a request to them, and I know the burden's on them, to say, okay, if you say what it is, give us the document redacted, for example, to take your point. So did any of that, I mean, as a remedy to somebody to say, okay, if you say this, give us the document redacted, give it highlighted or whatever, and they refused to do all that? I mean, we're sitting here on an incorrect statement of the law. So we're wanting the court to remand it for that kind of ---- I know what you want. I mean, I'm clear what you want. I've got it. You know, and if pressed on it, we're going to do what we do. I'm just asking questions. That's the point of oral argument, to get clarity. I'm just trying to see if this is Armageddon, you know, on this deal, or whether or not, notwithstanding well-principled positions, you know, if the bottom line is to get the information to move the litigation along, I think, as opposed to a pronouncement from the Fifth Circuit on Rule 26. Well, you're all still going to be down there trying to battle the deal out. But that's what I'm at. I got your point. All right. Now, to the point I raised to opposing counsel. Okay. You're what I ask her about seeing the chief mediator and at least discussing this while you're in the building. Are you amenable to that, or what? Well, while I'm in the building. Well, the mediator's office is right around this corner. Okay. Yeah, sure. I am in D.C. So if we do it immediately after this hearing, sure. What time is your flight? It's at 2 o'clock. Oh, you're in business. Okay. No, it's right around this corner, and I already put the question to the mediator, so he knows you may be coming. But don't read me wrong. This is not like a judicial order. If you don't go, you know, we're going to rule against you. It's just something in cases we do. There's a wall between us. We're not going to ask them what discussion. It just strikes, without giving up your legal positions taken, of whether or not at least where you are, if it moves the ball along and it works out. If it doesn't, fine. You know, we're going to come. I guess, Your Honor, I'm always forward trying to resolve things. Yeah. My concern is this legal error. I'm very concerned about that legal error being on the books and this court making clear what the burden of proof is, because that is what impacts all sorts of cases, way beyond the discrimination of the EEOC. You're here on behalf of a client. Are you here to make law for infinity, or are you here to resolve this case with respect to your client? You know, I got all that, but if the bottom line is moving this litigation with this claim, you know, you don't know what you may get from us. You could lose. You absolutely could lose. And if you lose, you're right back where you started with a ruling, whether it's two to one, three to zip, or whatever. You could lose. And if you lose, whatever the magistrate just said in Hornbook Law, it's what she said, but she backed down. But if somewhere buried within this is resolving the litigation, Rule 26 says what it is, this is just a question for the bench. If that's any place in the calculus, is that desirable to try to work through it? If it's not, and it's Armageddon, and you want to go, fine. Your Honor, it's not about it being Armageddon, but my client is more than just this case. My client is about the law and the precedent and making sure that in cases that are to follow, have proper instruction from this court as to what the proper burdens are and the legal standards. So, I mean, I do represent the government, so it's a little bit of a different position than a counsel with a private client. It's not different. We get the U.S. attorney in here all the time. We get the government in here on other cases, and we say the same thing. We're just saying, I got your point. I'm not going to be argumentative about it. I think you got mine. So I got the point, you know, and we've got the deal. It's teed up. We're going to take the case, and it's submitted. I will still say. Well, I will still say. Go around the corner. I want the court to show you where it is. If the conversation lasts ten seconds, that's it, fine. You know, the case will be submitted. We're going to decide it. I just felt duty bound to at least say it so you know it. Got it? All right. Thank you both for a very spirited argument.